Coos,
Nov. 4, 1913.

GEORGE HILLIARD *v.* UPPER COOS RAILROAD.

Neither the president nor a director of a corporation has power by virtue of his office to bind the company.

A defendant's statement that certain items sued for are valid claims against a corporation of which he is president and his promise in behalf of the company to pay them are not sufficient to avoid the bar of the statute of limitations when pleaded by the corporation, unless the declarant was expressly authorized to make them, or there is evidence of a course of dealing from which such authorization can be inferred.

Where a defendant has been released from personal liability in consideration of his agreement to waive the defence of the statute of limitations to a suit for the same cause against a corporation of which he is president, it is incumbent upon the plaintiff on the trial of the subsequent action to show that the contract upon which he relies was authorized or ratified by the company.

In the trial of a suit against a corporation, evidence of a statement by the president tending to establish the validity of the claim, but not made in the course of any action by him in behalf of the defendant, is inadmissible unless accompanied by proof of his authority to bind the company.

ASSUMPSIT, for goods sold and delivered. Writ dated April 6, 1908. Plea, the general issue, with a brief statement that the cause of action did not accrue within six years. Trial by jury, resulting in a disagreement. The defendants excepted to the denial of motions for a nonsuit and the direction of a verdict in their favor. Transferred from the December term, 1912, of the superior court on a bill of exceptions allowed by *Chamberlin*, J.

The goods for which payment was claimed were sold between 1887 and 1889 to George Van Dyke, who was during that time, and until his death in 1909, president of the Upper Coos Railroad. The plaintiff brought suit against Van Dyke for the items sued for, with others. The case was sent to a referee, before whom the parties agreed that the referee should report "judgment for the defendant and judgment satisfied." The following memorandum, dated October 21, 1901, was signed by counsel for Van Dyke: "The entry of judgment for defendant [describing the case] is not a waiver or bar by the plaintiff of any claim which he may have against the Upper Coos Railroad." In 1906, the plaintiff moved to bring the action forward, and a hearing was had before the court on September 14, 1906. Judgment was finally rendered for the defendant at the September term, 1906, in accordance with the agreement before the referee.

In the present case, there was evidence that at the time of the hearing before the referee Van Dyke objected that the items of the present specification were not due from him personally. The defendants excepted to evidence of statements made by Van Dyke and his counsel, who was also a director in the Upper Coos Railroad, in 1901 and at the hearing in 1906, which were claimed to show liability of the defendants for the items objected to by Van Dyke and an agreement not to plead the statute of limitations against them. A witness testified that Van Dyke was "hustling around" when the railroad was being built. The plaintiff testified that he did not know anything about the Upper Coos Railroad, but charged everything to Van Dyke and expected to have credit therefor upon his indebtedness to the latter; that Van Dyke had general supervision of the railroad which was built in 1887; and that nobody else ever said anything to him about material. There was evidence that a

portion of the material sued for was used by the railroad. There was no evidence tending to show an express or implied promise by the defendants to pay the plaintiff, other than the refusal of Van Dyke to pay and the statements made by him in 1901 and 1906.

*Sullivan & Daley, Thomas F. Johnson,* and *Ira W. Thayer (Mr. Sullivan* orally), for the plaintiff.

*Drew, Shurtleff & Morris (Mr. Morris* orally), for the defendants.

PARSONS, C. J.   Neither the president nor a director of a corporation has power by virtue of his office to bind the corporation. *Holland* v. *Association,* 68 N. H. 480; *New Boston Fire Ins. Co.* v. *Upton,* 67 N. H. 469; *Wait* v. *Association,* 66 N. H. 581; *Buttrick* v. *Railroad,* 62 N. H. 413, 418; *Lyndon Mill Co.* v. *Institution,* 63 Vt. 581.

The only evidence to toll the bar of the statute rests in the statements claimed to have been made in 1906; for whatever was said and with whatever authority in 1901, no statement then made could prove a promise within six years before the bringing of the suit in 1908. Assuming as the most favorable interpretation that can be put upon the plaintiff's account of Van Dyke's statements in 1906, that he then admitted the items sued for were valid claims against the defendants and in their behalf promised to pay them, the fact that he held the office of president does not make his admission and promise the acts of the corporation. They are not such unless he was expressly or impliedly authorized to make them in behalf of the defendants. It is conceded there is no evidence of express authorization, and no evidence is found of a course of dealing from which such authorization could be inferred. Although the plaintiff testified that Van Dyke had supervision of the railroad and another witness said he was "hustling around" when the road was being built, there is no evidence of any acts performed by him upon which either conclusion was based. It does not appear that he ever bought any material upon the credit of the defendants. The items sued for were sold by the plaintiff upon Van Dyke's credit, and the plaintiff expected to be paid by an adjustment of Van Dyke's personal account against him. There is no evidence of any statements by Van Dyke during the treaty for the goods or their delivery, or while he was doing any act as the agent of the defendants, which would tend to charge them. The statements relied upon were made while

he and his counsel were employed in Van Dyke's personal business —the defence of the plaintiff's suit against him—long after the transactions upon which the present claims are based. Upon the plaintiff's account, he had a valid claim against Van Dyke, even if, in fact, the material was purchased by him as agent for the defendants. An agent who contracts in his own name for an undisclosed principal is personally liable. 1 Sto. Ag., s. 266; *Kaulback* v. *Churchill*, 59 N. H. 296.

If the plaintiff chose to release Van Dyke and accept instead the agreement of the company to pay for the goods, he might do so; but Van Dyke had no power to bind the corporation for the purpose of securing his own discharge from liability. "The directors or trustees of a corporation, in accepting their appointment to office, impliedly undertake to give the company the benefit of their best care and judgment, and to use the powers conferred upon them solely in the interest of the corporation. They have no right under any circumstances to use their official positions for their own benefit or the benefit of any one except the corporation itself. It is for this reason that the directors have no authority to represent the corporation in any transaction in which they are personally interested in obtaining an advantage at the expense of the company. . . . Accordingly, it has been held in numerous cases that the directors of a corporation have no authority to bind the company to any contract made with themselves personally, or to represent it in any transaction with third persons, in which they have a private interest at stake. The principle acted upon in these cases is a general principle of the law of agency and applies to every agent of a corporation, whatever may be his position." 1 Mor. Corp., s. 517; *Pearson* v. *Railroad*, 62 N. H. 537, 540; *Wardell* v. *Railroad*, 103 U. S. 651, 658.

The alleged agreement of the defendants to waive the statute of limitations was made, according to the plaintiff's evidence, as part of the settlement of his suit against the president of the corporation. The only consideration for such a contract was the release of the president from his personal liability. Charged with knowledge of Van Dyke's personal interest in the alleged contract, the burden is on the plaintiff to show the authority of Van Dyke to make such a contract as agent of the corporation, or its ratification of it. *Farrington* v. *Railroad*, 150 Mass. 406, 409; *Campbell* v. *Bank*, 67 N. J. Law 301; *West St. Louis Bank* v. *Bank*, 95 U. S. 557, 559.

The defendants also excepted to the evidence of Van Dyke's

statements. Not being made in the course of any action by him in behalf of the defendants, the evidence was inadmissible without some evidence tending to prove his authority to bind the corporation. *Westminster Bank* v. *Electrical Works*, 73 N. H. 465, 481; *Cate* v. *Blodgett*, 70 N. H. 316; *Guerin* v. *Company*, 70 N. H. 133; *Nebonne* v. *Railroad*, 67 N. H. 531, 532; *Low* v. *Railroad*, 45 N. H. 370. The absence of authority has already been discussed. Whether what the evidence tended to prove Van Dyke said authorizes the finding of a new promise, if authority to make such promise had been shown, is obviously an immaterial question.

Excluding the incompetent evidence, there was nothing for the jury and a verdict should have been ordered for the defendants. That order is now made.

*Verdict and judgment for the defendants.*

All concurred.