Merrimack, }
Nov. 5, 1924. }

### AMY J. WRIGHT *v.* BOSTON & MAINE RAILROAD.

Evidence that a railroad claim agent was employed to investigate claims for personal injuries and to adjust them when that could be done for a definite limited sum, or less, has no tendency to prove that he had express authority to admit the company's liability in any such case.

The company's admission that a claim agent was employed to adjust and settle personal injury claims will not of itself justify a finding that he had implied authority to admit liability on such claims, or that he was held out by his employer as having such authority.

CASE, for negligence. Trial by jury. Verdict for the plaintiff. The plaintiff testified that after she was injured while alighting from one of the defendants' cars, she sent for one Clinton, their claim agent, who called on her the day after the accident, and told her, among other things, not to worry, the railroad would make everything all right.

The court, *Branch*, C. J., refused to instruct the jury that it could not be found from this evidence that the defendants were in fault, and they excepted.

*Robert W. Upton* (by brief and orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendants.

YOUNG, J. The test to determine the validity of the defendants' exception is to inquire whether it can be found that they (1) authorized their claim agent to admit liability, or (2) held him out as having such authority.

1. The evidence relevant to the issue of what the defendants actually authorized Clinton to do consists of his testimony that he was employed to investigate claims for personal injuries and to adjust them when that could be done for five hundred dollars or less, and their admission that he was employed to adjust and settle personal injury claims. This is all the evidence there is relevant to the issue of what Clinton was expressly authorized to do, and it is obvious that it has no tendency to prove that he had express authority to admit liability in this or any other case.

2. The only evidence relevant to the issue of what the defendants

held Clinton out as authorized to do is the fact they employed him to adjust and settle claims for personal injuries. There is no evidence of what those employed in that business are accustomed to do, and it certainly is not common knowledge that claim agents usually begin the investigation of a claim by admitting liability. On the contrary it is more nearly true to say that that is the one thing they never do.

In other words, while it is true the fact the defendants employed Clinton as their claim agent carried with it by implication, in so far as third parties were concerned, authority to do whatever was reasonably necessary to effectuate their purpose of investigating personal injury claims and settling them when that could be done for five hundred dollars, that does not help the plaintiff, for it is not even ordinarily useful — much less necessary — for a claim agent in order to effectuate the purpose for which he is employed to admit his principal is liable before he begins to investigate a claim.

In short there is no evidence tending to prove that Clinton had either express or implied authority to admit liability or that the defendants held him out as having such authority. *New Boston Fire Insurance Co.* v. *Upton,* 67 N. H. 469; *Nebonne* v. *Railroad,* 67 N. H. 531; *Guerin* v. *Company,* 70 N. H. 133; *Bohanan* v. *Railroad,* 70 N. H. 526; *Westminster National Bank* v. *Electrical Works,* 73 N. H. 465; *Hilliard* v. *Railroad,* 77 N. H. 129; *Atto* v. *Saunders,* 77 N. H. 527; *New Hampshire &c. Fruit Co.* v. *Paine,* 80 N. H. 540; 2 C. J. 555, 571, 573; 21 R. C. L. 854.

*Exception sustained.*

All concurred.